http://www.va.gov/vetapp16/Files4/1630441.txt

Citation Nr: 1630441 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 12-31 430 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Medical and Regional Office Center in Fargo, North Dakota

THE ISSUES

1. Entitlement to service connection for left ear hearing loss.

2. Entitlement to service connection for tinnitus, to include as secondary to service-connected right ear hearing loss.

REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States

ATTORNEY FOR THE BOARD

M. Young, Counsel

INTRODUCTION

The Veteran served on active duty from July 1969 to January 1972.

These matters are before the Board of Veterans' Appeals (Board) on appeal from an October 2011 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Fargo, North Dakota. In December 2013 and January 2015 the Board remanded these matters for additional development.

FINDINGS OF FACT

1. The Veteran was exposed to acoustic trauma during active military service.

2. The evidence is at least in relative equipoise as to whether the Veteran's left ear hearing loss is related to noise exposure during active military service.

3. The Veteran's diagnosed tinnitus disorder was caused by his service-connected bilateral hearing loss disability.

CONCLUSIONS OF LAW

1. Service connection for left ear hearing loss is granted. 38 U.S.C.A. §§ 1110, 1112, 1113, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.385 (2015).

2. Service connection for tinnitus as secondary to service-connected bilateral hearing loss is granted. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.310 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 

In this decision, the Board grants the Veteran's claim for entitlement to service connection for left ear hearing loss and tinnitus, which represents a complete grant of the benefit sought on appeal. Thus, there is no need to discuss whether VA has complied with its duties to notify and assist found at 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. § 3.159.

Legal Criteria, Factual background and Analysis

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may also be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Certain chronic diseases (including organic diseases of the nervous system such as sensorineural hearing loss (SNHL)) may be service connected on a presumptive basis if they are manifested to a compensable degree within a specified period of time postservice (one year for SNHL). 38 U.S.C.A. §§ 1112, 1113; 38 C.F.R. §§ 3.307, 3.309.

When the requirements for a chronic disease shown in service (or within the presumptive period under 38 C.F.R. § 3.307) are met, then all subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. Walker v. Shinseki, 708 F. 3d 1331, 1335 (2013). If evidence of a chronic condition is noted during service or during the presumptive period, but chronicity in service is not adequately supported, then a showing of continuity of symptomatology after discharge is required to support a claim for disability compensation of the chronic disease.

A disability which is proximately due to or the result of a service-connected disease or injury shall be service-connected. Any increase in severity of a nonservice-connected disease or injury that is proximately due to or the result of a service-connected disease or injury and not due to the natural progress of the disease, will also be service-connected. 38 C.F.R. § 3.310.

Impaired hearing will be considered a disability for VA purposes when the auditory thresholds in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz (Hz) are 40 decibels or more; or when the thresholds for at least three of these frequencies are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. The provisions of § 3.385, however, do not preclude service connection for a current hearing disability where hearing was within normal limits on audiometric testing at separation from service. Although that regulation speaks in terms of service connection, it operates to establish when a measured hearing loss is (or, more accurately is not) a "disability" for which compensation may be paid, provided that other requirements for service connection are otherwise met under 38 U.S.C.A. §§ 1110, 1112 and 38 C.F.R. §§ 3.303 , 3.307. Hensley v. Brown, 5 Vet .App. 155 (1993). 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue, the benefit of the doubt shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. If the preponderance of the evidence is against the claim, the claim is to be denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the Veteran or obtained on his behalf be discussed in detail. Rather, the Board's analysis will focus specifically on what evidence is needed to substantiate each claim and what the evidence in the claims file shows, or fails to show, with respect to each claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

As there is considerable overlap in the applicable evidence for the Veteran's claims for entitlement to service connection for left ear hearing loss and tinnitus, the Board will discuss the claims together. 

Service records confirm the Veteran's military occupational specialty was as a helicopter repairman. Noise exposure is consistent with the circumstances of the Veteran's service. Service treatment records (STRs), however, are silent for any mention of left ear hearing loss and tinnitus in service.

On the authorized audiological evaluation at induction in May 1969, pure tone thresholds, in decibels, were:

HERTZ

500
1000
2000
3000
4000
RIGHT
15
0
0
/
0
LEFT
15
0
0
/
15

On the authorized audiological evaluation at separation in January 1972, pure tone thresholds, in decibels, were:

HERTZ

500
1000
2000
3000
4000
RIGHT
20
15
10
15
20
LEFT
20
10
10
10
10

In a May 2011 statement the Veteran reported that his hearing has steadily been getting worse since service due to working around helicopters. He stated he has had great difficulty hearing whole conversations, whether it is a one-on-one conversation or a meeting. When possible he has to have the person repeat what was said once or twice in order for him to understand what was said.

On June 2011 VA audio examination, pure tone thresholds, in decibels, were:

HERTZ

500
1000
2000
3000
4000
RIGHT
45
30
30
30
50
LEFT
15
20
35
60
60

Speech audiometry revealed speech recognition ability of 96 percent in the left ear. The diagnoses, in pertinent part, were mild to moderately severe high frequency SNHL and tinnitus likely associated with hearing loss.

The examiner noted that the Veteran's enlistment audiogram shows normal hearing bilaterally except at 500 Hz bilaterally. The Veteran's separation audiogram shows normal hearing, bilaterally. There was not a significant threshold shift in the Veteran's hearing during this period. The examiner opined it is less than likely that the hearing loss is the result of the Veteran's military noise exposure. The onset of his tinnitus was postservice, he experienced noise exposure both during and postservice. The examiner further opined it is less than likely that the tinnitus is the result of the Veteran's military noise exposure but due to other causes. 

In his November 2012 Substantive Appeal, the Veteran noted that when he entered military service he had good hearing. He stated that being around high frequency noises of helicopters and gun fire started the loss of his hearing.

On January 2014 VA hearing loss and tinnitus examination pure tone thresholds, in decibels, were:

HERTZ

500
1000
2000
3000
4000
RIGHT
45
40
30
35
50
LEFT
15
25
35
60
65

Speech audiometry revealed speech recognition ability of 96 percent in the left ear. The diagnoses were mixed hearing loss, left ear SNHL in the frequency range of 500-4000 Hz, and tinnitus. The examiner opined that there was no permanent positive threshold shift (worse than reference threshold) greater than normal measurement variability at any frequency between 500 and 6000 Hz for the left ear. The examiner further opined that it is less than likely that the hearing loss in the left ear is the result of the Veteran's military noise exposure due to there being no threshold shifts when his enlistment examination was compared to his separation examination and at the time of separation his hearing was normal. He did have noise exposure postservice from machine shop noise, truck driving, deer hunting, chainsaw use, and tractor-plow which was likely the cause of his postservice hearing loss. 

The examiner opined that tinnitus was less likely than not (less than 50 percent probability) caused by or a result of military noise exposure. The rationale for the opinion was that the Veteran reported that he has had tinnitus for about 5 years. On previous examination he reported he had tinnitus for 10 years. The onset of tinnitus was postservice. There was no documentation noted in STRs regarding tinnitus. Further, with the time of onset of tinnitus, significant noise exposure postservice, and with the Veteran having mixed hearing loss in the right ear (for which part of the hearing loss is conductive and would unlikely be related to military noise damage), it is less than likely that the tinnitus is the result of the Veteran's military noise exposure but due to postservice etiology.

In an April 2015 VA addendum opinion the VA audiologist noted that the Veteran's enlistment and separation examinations showed normal hearing. The audiologist reported that the National Institute for Occupational Safety and Health (NIOSH) recommends that significant threshold shift is defined as a 15 decibel hearing loss shift or more at any one frequency of 500 Hz to 4000 Hz; there was no significant shift in thresholds in the left ear from enlistment to separation. The audiologist quoted the following statement [Institute of Medicine] in the medical opinion, "There is not sufficient evidence from longitudinal studies in laboratory animals or humans to determine whether permanent noise-induced hearing loss can develop much later in one's lifetime, long after the cessation of that noise exposure. Although the definitive studies to address this issue have not been performed, based on the anatomical and physiological data available on the recovery process following noise exposure, it is unlikely that such delayed effects occur." He further noted that as a result, for the left ear, given normal hearing at separation, no significant shift in thresholds from enlistment to separation and given that the above statements are true, then left ear hearing impairment is less likely as not (less than 50/50 probability) caused by or aggravated by military noise exposure. 

Moreover, at the time of the January 2014 VA examination, the Veteran stated that he had tinnitus , which started between 5 and 10 years ago. This information indicates that the Veteran's tinnitus began more than 30 years since his separation from the military. Recurrent bilateral tinnitus is less likely as not (less than 50/50 probability) caused by or aggravated by military noise exposure. However, the Veteran has a current diagnosis of bilateral hearing loss, and his recurrent bilateral tinnitus is at least as likely as not (at least 50/50 probability) a symptom associated with the hearing loss, as tinnitus is known to be a symptom associated with hearing loss. The evidence is sufficient to conclude that noise doses associated with hearing loss are likely to be associated with tinnitus.

The evidence clearly shows that the Veteran does currently have a left ear hearing loss disability under 38 C.F.R. § 3.385. As he is fully competent to report facts observable or within his personal knowledge, the Board finds his lay testimony is competent and credible evidence of hazardous noise exposure while performing duties as a helicopter repairman in service. See Layno v. Brown, 6 Vet. App. 465, 469-70 (1994). The evidence appears to be at least in relative equipoise on the matter of a nexus to service. In so finding, the Board acknowledges that there are VA opinions that are against finding a nexus to the Veteran's active service. The Board has considered that service connection has been granted for right ear hearing loss based partly on evidence of a hearing loss shift (in service) of 15 decibel or more at any one frequency of 500 Hz to 4000 Hz, thus (according to NIOSH) constituting a significant shift in thresholds. There is also documented evidence of a left ear hearing loss shift inservice albeit not significant (as there was a 10 decibel loss) but nonetheless this is evidence of possible left ear hearing loss shift. Moreover, because the Board is granting service connection for the Veteran's tinnitus in this decision, and because the examiner in the April 2015 addendum opinion noted that the Veteran's recurrent bilateral tinnitus is at least as likely as not (at least 50/50 probability) a symptom associated with the hearing loss, and for bilateral tinnitus to be due to hearing loss the hearing loss must have existed and related to active service. Resolving any remaining doubt in favor of the Veteran, the Board finds that service connection for left ear hearing loss is warranted. 

The Board finds that service connection for tinnitus as secondary to service-connected bilateral hearing loss is warranted. By rating decision in March 2014 service connection was granted for right ear hearing loss; and by this Board decision, left ear hearing loss is being granted. In June 2011 and January 2014 VA medical examination reports, VA audiologists diagnosed the Veteran as having tinnitus. In an April 2015 VA addendum opinion the audiologist opined that the Veteran's recurrent bilateral tinnitus is at least as likely as not (at least 50/50 probability) a symptom associated with the hearing loss, as tinnitus is known to be a symptom associated with hearing loss. The examiner noted that the evidence was sufficient to conclude that noise doses associated with hearing loss are likely to be associated with tinnitus. Resolving all doubt in the Veteran's favor, service connection for tinnitus, secondary to service-connected bilateral hearing loss, is warranted.

After considering all the evidence of record, including the Veteran's credible statements, the Board finds that the evidence is at least in relative equipoise. The benefit of the doubt doctrine will therefore be applied. See 38 U.S.C.A. § 5107; Gilbert, 1 Vet. App. at 55. Service connection for left ear hearing loss and tinnitus is granted.

ORDER

Entitlement to service connection for left ear hearing loss is granted.

Entitlement to service connection for tinnitus is granted.

____________________________________________
MILO H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs